UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRANK LONG,

        Plaintiff,

                                        Case Number 04-10042-BC

v.                                        Honorable David M. Lawson

DR. MARK ADAMS and
SAGINAW VALLEY NEUROSURGERY, P.C.

        Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Presently before the Court is the defendants' motion for summary judgment. On March 8, 2004, the plaintiff, Frank Long, a citizen of Missouri, filed a complaint in this Court alleging medical malpractice against the defendants, who are citizens of Michigan. The plaintiff contends that he suffered injury due to the professional negligence of Dr. Mark Adams, one of the named defendants, when Adams failed to timely perform a procedure to correct complications that arose after the plaintiff's initial brain surgery. In their untimely motion for summary judgment, the defendants rely on a recent ruling by the Michigan Court of Appeals that interprets the formalistic requirements of Michigan Compiled Laws § 600.2912d(1), which addresses the procedure for signing and verifying out-of-state affidavits. The defendants claim that the plaintiff's affidavit of merit is defective, and even if allowed to correct the defect, the plaintiff's new affidavit would be filed outside the applicable statute of limitations. However, the authority on which the defendants rely address state procedural rules that are not applicable in federal court under the rule of *Erie R.R. Co. v. Tompkins* and its progeny. The plaintiff's affidavit and pleadings conform to the applicable federal rules. Therefore, the Court will deny the defendants' motion for summary judgment.

I.

Long filed his amended complaint alleging medical malpractice against Dr. Mark Adams and his employer, Saginaw Valley Neurosurgery, P.C., on March 8, 2004. The initial complaint did not contain a notarized affidavit of merit; however, the amended complaint includes an affidavit of merit from a physician that was notarized in California.

According to the amended complaint, Adams performed a craniotomy, evacuation of a subdural hematoma, and fenestration of an arachnoid cyst (brain surgery) upon the plaintiff in Michigan on September 7, 2001. On September 11, 2001, after the operation, Adams determined that the fenestration was unsuccessful and the plaintiff required a cysto-peritoneal shunt "in order to properly manage the problem and prevent brain damage." Amended Compl. at ¶ 4. Dr. Adams apparently consulted with a colleague, Dr. DeHart, about the plaintiff's postoperative care. A September 17, 2001 entry by Dr. Adams in the plaintiff's medical records indicated that Dr. DeHart "agree[d] with the shunt procedure and I fe[lt] it was safe." *Ibid.* (internal quotation marks omitted). On September 18, 2001, Dr. DeHart further noted, "I believe that overall he is unlikely to have an infectious complication of the shunt procedure." *Ibid.*

Between September 11 and September 19, 2001, the plaintiff alleges that he "continued to have an archnoid cyst, which reaccumulated, progressed and compressed the left frontotemporal region across the falx such that a trapped ventricle occurred." *Id.* at ¶ 6. The plaintiff believes that he "presented progressive signs and symptoms of neural compression." *Ibid.* The signs meant that there would be "a strong likelihood of . . . permanent brain damage" unless Dr. Adams "performed timely and adequate surgery, particularly before September 19, 2001." *Ibid.*

However, the plaintiff believes that the necessary procedure to resolve the postoperative complications did not occur in a timely fashion. The delay between September 11, 2001 and September 19, 2001, the ultimate date of procedure, "progressively adversely affected [the plaintiff's brain] by the mass effect of the re-accumulation in the cyst, clinically resulting in delirium and decreased level of alertness and responsiveness, culminating in a respiratory arrest and acute hypoxemic respiratory failure on September 18, 2001." *Id.* at ¶ 7.

The plaintiff alleges that Dr. Adams negligently delayed surgical intervention, failed to complete rounds to determine the plaintiff's status, and did not examine the plaintiff properly or re-evaluate his condition on September 18, 2001, although Adams knew or should of known that the plaintiff had a "dangerous re-accumulation of the cyst." *Id.* at ¶ 8. In addition, the plaintiff notes that Dr. Adams did not make arrangements for some other doctor to check the plaintiff's status. Finally, the plaintiff states that Dr. Adams's conduct likely violated hospital procedures, rules, regulations, and policies on following patients until the day they are discharged from the hospital.

As noted, the plaintiff filed with his amended complaint an affidavit of merit completed by Dr. Edward Smith, a board-certified neurosurgeon who apparently practices medicine in California. *See* Amended Compl. Ex. , Smith aff. In the affidavit, Smith "hereby swear[s] or affirm[s] upon oath" that:

> 2. I have read the record concerning the care and treatment of Frank Long at St. Mary's Hospital in September 2001, particularly as provided by his neurosurgeon, Dr. Mark Adams, whom I deduce to be a Board Certified Neurosurgeon.
>
> 3. I have read the Pre-Notice of Intent to file suit sent on or about July 18, 2003.
>
> 4. I have read the complaint filed on behalf of Frank Long in this action, and hereby state it has merit, and in particular state

-3-

> (a) the applicable standard of care is as stated in detail in the Complaint and the report attached, with Affidavit by Dr. Lerner, a neurosurgeon, basically summarized as he needed to re-operate on the cyst to ameliorate the re-accumulation of fluid.
> (b) in my opinion, Dr. Adams breached the standard of care by waiting until September 19, 2001, to re-operate.
> (c) Dr. Adams should have operated on Mr. Long before he arrested to decompress the re-accumulation of fluid in the cyst;
> (d) The failure to re-operate allowed the re-accumulation of fluid in the cyst to compress and damage delicate brain structure unable to withstand that type of insult.
>
> There is merit to the Complaint.

Smith aff. at ¶¶ 2-4. The affidavit bears the stamp and seal of Kashia Gomez, a notary public in Santa Barbara, California, whose commission was set to expire on May 5, 2004. The date recorded on the affidavit is March 5, 2004.

The amended complaint also contains a document entitled "Affidavit" that was filed with the initial complaint, which was authored by Dr. Bernard Lerner. That "affidavit" was not notarized, nor did Dr. Lerner state that he was making his statements on oath. It concludes that "it is my opinion, within a reasonable degree of medical certainty, that Dr. Mark Adams departed from applicable standards of care relating to the treatment of Mr. Frank Long, inclusive of September 6, 2001 through October 1, 2001[.]" Lerner aff. at ¶ 1(I). The affidavit is based on a detailed report, also attached to the amended complaint, prepared by Dr. Lerner containing his reasoning.

II.

A motion for summary judgment under Fed. R. Civ. P. 56 presumes the absence of a genuine issue of material fact for trial. It is "appropriate [when] 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law.'" *Frazier v. Honda of America Mfg., Inc.*, 431 F.3d 563, 565 (6th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). Summary judgment under Rule 56 is a particularly apt method of addressing an issue when the parties agree, as here, that there are no material facts in dispute and "the sole question at issue [is] a question of law." *United States v. Donovan*, 348 F.3d 509, 511 (6th Cir. 2003); *see also Wachovia Bank v. Watters*, 431 F.3d 556, 559 (6th Cir. 2005); *Progressive Corp. and Subsidiaries v. United States*, 970 F.2d 188, 190-91 (6th Cir. 1992).

In medical malpractice cases, Michigan law contains certain requirements designed to ensure that plaintiffs have consulted with the appropriate medical professionals in advance of filing suit to verify that claims of professional negligence have merit before doctors and hospitals are sued and put to the expense of mounting a defense. One such rule states that a person contemplating a lawsuit against a medical provider for professional negligence must give advance notice of an intent to sue and identify the grounds for relief. Mich. Comp. Laws § 600.2912b. Another statute provides a heightened pleading requirement and states that "the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness . . . [who] has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice." Mich. Comp. Laws § 600.2912d(1). The Michigan Supreme Court has observed that "the purpose of the statute[s] [is] to prevent frivolous medical malpractice claims." *Dorris v. Detroit Osteopathic Hosp. Corp.*, 460 Mich. 26, 47, 594 N.W.2d 455, 466 (1999).

As noted above, the plaintiff filed an affidavit of merit with his amended complaint in this case. He sought the advice of a physician certified in the same specialty as Dr. Adams, who opined that Dr. Adams's care rendered to the plaintiff was substandard and Dr. Adams was negligent.

According to the plaintiff's expert, the claim is not frivolous.  However, the defendants, seeking to take advantage of a recent Michigan Court of Appeals decision interpreting Michigan's formal – and now formalistic – requirements relating to the verification of affidavits signed by out-of-state notaries, claim that the plaintiff's affidavit does not comply with Michigan's requirements, it is therefore a nullity, and the complaint is rendered defective thereby and should be dismissed.

The Case Management and Scheduling Order provides that summary judgment motions were to be filed in this case on or before December 15, 2004.  The impetus for the defendant's tardy motion was the state court of appeals' decision in *Apsey v. Memorial Hosp. (On Reh)*, 266 Mich. App. 666, 702 N.W.2d 870 (2005), initially decided on April 19, 2005, and then published after reconsideration on June 9, 2005.  In that case, the court found that the Michigan legislature had enacted two statutes pertaining to affidavits signed by out-of-state notaries public.  The first, enacted by the state legislature in 1879, required that affidavits intended to be "received" and "read" in "judicial proceedings" must be "authenticated" by a certificate "by the clerk of any court of record in the county where such affidavit shall be taken, under the seal of said court."  Mich. Comp. Laws § 600.2102.  The second, which became effective in 1970 when Michigan adopted the Uniform Recognition of Acknowledgments Act, provides that an out-of-state notary's signature in his or her own state is as valid as if the notary had performed the act in Michigan. Mich. Comp. Laws § 565.262(a).  Additional certification or authentication is not required because "the signature, rank or title and serial number, if any, of the person are sufficient proof of the authority of a holder of that rank or title to perform the act.  Further proof of his authority is not required. . . . The signature and title of the person performing the act are prima facie evidence that he is a person with the designated title and that the signature is genuine."  Mich. Comp. Laws § 565.263(1), (4).  The *Aspey* court

determined that the 1879 statute took precedence over the later-enacted legislation. Because Aspey's affidavit of merit was notarized in Pennsylvania, and no certification was attached, the state court held that the affidavit was a "nullity" and the complaint thus did not fulfill the heightened pleading requirements for medical malpractice actions. *Id.* at 676, 702 N.W.2d at 877. However, because of the novelty of its holding, the court held that its new rule would have prospective application only. *Id.* at 682, 702 N.W.2d at 881.

The defendants argue that the same fate ought to befall Frank Long, and his case should be dismissed because his affidavit does not meet Michigan's procedural requirements. The defendants' arguments, however, ignore the fact that this case pends in federal court, and the state's procedural rules have no application here. Sixth Circuit precedent firmly establishes that "[i]n federal diversity actions, state law governs substantive issues and federal law governs procedural issues." *Legg v. Chopra*, 286 F.3d 286, 289 (6th Cir. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)); *see also McDonald v. Petree*, 409 F.3d 724, 730 (6th Cir. 2005) (holding that federal courts sitting in diversity action must apply the federal claim preclusion and law-of-the-case rules because such rules are "procedural"); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 528-29 (6th Cir. 2002) (stating that "'[i]f the [federal] Rule speaks to the point in dispute and is valid, it is controlling, and no need be paid to contrary state provisions'") (quoting 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4508 (1982)).

Over forty years ago in *Hanna v. Plumer*, 380 U.S. 460 (1965), the Supreme Court clarified the distinction between "substantive" and "procedural" laws. The Court stated that a federal court sitting in diversity should determine whether a federal procedural rule directly "collides" with the state law sought to be applied. *Id*. at 470-74. If a direct conflict exists, the federal rule ought to be

-7-

applied if it is constitutional and within the scope of the Rules Enabling Act. *See also Ggasperinin v. Centr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The task is relatively straight-forward when a Federal Rule of Civil Procedural is involved:

> When a situation is covered by one of the Federal Rules, the question facing the court is a far cry from the typical, relatively unguided *Erie* choice: the court has been instructed to apply the Federal Rule and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their *prima facie* judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions.

*Hanna*, 380 U.S. at 471.

The Supreme Court has explained that a federal court, in determining whether a Federal Rule collides with state law, should consider the scope of the Federal Rule and whether it is "sufficiently broad to control the issue before the Court." *Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987). The Federal Rule is sufficiently broad when it "leave[es] no room for the operation of the [state] law." *Ibid.* Courts are to read the Federal Rules in such away to give them their plain meaning; federal courts should not read the Federal Rules narrowly specifically to avoid a conflict with state law. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n. 9 (1980) (stating "a broad reading that would create significant disuniformity between state and federal courts should be avoided if the text permits").

The defendants' argument that the plaintiff's complaint is insufficient is grounded on the premise that it falls short of the heightened pleading requirements of Michigan Compiled Laws section 600.2912d. However, Federal Rule of Civil Procedure 8 requires only that "[a] pleading which sets forth a claim for relief [must] . . . contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks."

Fed. R. Civ. P. 8(a). There are no heightened pleading requirements for medical malpractice cases contained in Rule 8(a). In fact, the Supreme Court has held that it is inappropriate for a federal court to require pleading beyond Rule 8's basic formula. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

> Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake. . . . Thus, complaints in [municipal liability] cases, as in most others, must satisfy only the simple requirements of Rule 8(a).
> . . .
>
> [T]he Federal Rules do not contain a heightened pleading standard for employment discrimination suits. A requirement of greater specificity for particular claims is a result that "must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." . . . Furthermore, Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."

*Id.* at 514-15 (citations omitted).

As is clear from Rule 8(a)'s language, there is no requirement that *any* affidavit of merit must be filed to commence a medical malpractice case in federal court. The plaintiff's complaint in this case complies with Rule 8(a), and he need do no more to commence his action in this Court. The presence or absence of an affidavit does not render the complaint defective or subject it to dismissal.

Even if an affidavit were required, however, it is clear that the affidavit of Dr. Smith is sufficient under federal law. The governing federal statute does not even require affidavits and declarations to be notarized, and it permits substantial compliance with its provisions. *See* 28 U.S.C. § 1746. That statute provides:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same

> (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> . . .
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)."

28 U.S.C. § 1746. Dr. Smith's affidavit was sworn on oath and acknowledged by a notary public. It is in a proper form and substantially complies with the federal requirements.

Other federal courts sitting in diversity have considered and rejected the argument that state laws requiring the filing of affidavits of merit with complaints alleging medical malpractice govern the pleading requirements in federal court. For instance, in *Baird v. Celis*, 41 F. Supp. 2d 1358, 1360 (N.D. Ga. 1999), the court considered whether the Georgia statutory provision requiring a plaintiff to file an affidavit of merit to commence a medical malpractice action directly collided with Federal Rule of Civil Procedure 8. The plaintiff did not file an affidavit of merit. The court reasoned that she nonetheless had properly commenced a suit in federal court, even though a state court would have dismissed the action. The court reasoned:

> Based on the rule of *Hanna*, the Georgia expert affidavit requirement does not apply in this federal proceeding. . . . [T]he expert affidavit which requires specific allegations of negligence is in direct conflict with the notice pleading standard of Federal Rule 8(a). . . . Like the state law in *Hanna*, Georgia's expert affidavit requirement creates a higher standard for plaintiffs seeking to initiate a particular type of action than the conflicting Federal Rule. Like the Massachusetts law in *Hanna*, the affidavit requirement reflects a substantive policy of the State of Georgia with respect to tort reform. Nonetheless, Rule 8(a) controls the Plaintiff's pleading burden in the instant case. "When, because the plaintiff happens to be a non-resident, . . . [a state created] right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identical." *Hanna,* 380 U.S. at 473.

*Baird*, 41 F. Supp. 2d at 136-37 (citations omitted).

The same result was reached in *Boone v. W.R. Knight III*, 131 F.R.D. 609 (S.D. Ga. 1990), a case in which the plaintiff alleged the professional negligence of an insurance broker. The defendants argued that the negligence claim amounted to a claim of professional malpractice, subject to Georgia's statute requiring an expert affidavit. The court declined to reach the question of whether this type of malpractice was contemplated by the statute because the Federal Rules of Civil Procedure controlled the filing of the complaint, not the state statute. The court stated that "[t]he instant case falls squarely within the rule of *Hanna* [*v. Plumer*, 380 U.S. 460 (1965)]. The Georgia statute at issue here is codified in the state's civil procedure code and is essentially a pleading requirement. . . . Pleading in the federal courts, however, is governed by the specific provisions of Fed. R. Civ. P. 8." *Id.* at 611-12.

A federal district court in Florida similarly has refused to apply a state law requiring an affidavit of merit in a medical malpractice suit because the federal rules control pleading requirements. *See Braddock v. Orlando Regional Health Care Sys., Inc.*, 881 F. Supp. 580 (M.D. Fla. 1995); *see also Brown v. Nichols*, 8 F.3d 770, 773 (11th Cir. 1993) (stating that "[w]e have . . . observed that, in diversity actions . . . federal law governs pleading requirements").

The only state affidavit-of-merit laws that have been sustained in federal diversity actions are those laws that do not create additional pleading requirements, but rather require filings well after the pleadings have been fixed and the issues joined. For instance, in *Chamberlain v. Giampapa, M.D.*, 210 F.3d 154 (3d Cir. 2000), the court considered a New Jersey law that required the filing of an affidavit by "an appropriately licensed person" attesting that the defendant's conduct breached applicable professional standards; but the affidavit was not required until "60 days

following the date of filing of the answer to the complaint by the defendant." *Id.* at 156 n.1. The court held that the statute in that case did not collide with Rule 8. *See also Cruz v. Chang*, 400 F. Supp. 2d 906, 910 (W.D. Tex. 2005) (applying state statute requiring the furnishing of expert information "[n]ot later than . . . the 180th day after the date on which a health care liability claim is filed").

The defendants cite in support of their arguments a decision by the district court in Michigan's Western District, *Lee v. Putz*, 368 F. Supp. 2d 813 (W.D. Mich. 2003), *rev'd on other grounds*, 146 Fed. Appx. 383 (6th Cir. 2005). In that case, the court held that the plaintiff's defective affidavit of merit in a medical malpractice case, due to the lack of certification of an out-of-state notary's signature, deprived that court of jurisdiction to proceed because the plaintiff's complaint did not state a cognizable claim. This Court cannot agree with the rationale or result in that case for two reasons: first, by casting the issue in jurisdictional terms, the *Putz* court confounded the distinct concepts of the court's power to proceed with the merits of the claim set forth in the complaint. However, "the fact that a complaint may not state a claim upon which relief can be granted is of no relevance to the question of subject matter jurisdiction." *Cherokee Exp., Inc. v. Cherokee Exp., Inc.*, 924 F.2d 603, 609 (6th Cir. 1991) (internal quotes and citation omitted). Second, in concluding that the plaintiff's complaint with its flawed affidavit was itself defective, the *Putz* court entirely ignored the substantial body of law represented by *Erie* and *Hanna*. In addition, the court failed to address the sufficiency of the affidavit in light of 28 U.S.C. § 1746. This Court, therefore, respectfully declines to follow *Putz*.

Finally, even if *Apsey* provided guidance to the procedures to be followed in this federal diversity action, which it does not, the Michigan appellate court has limited the application of that

-12-

decision to cases filed after the filing of the opinion on rehearing. *Apsey*, therefore, would not undermine the plaintiff's pleadings in this case, including the attached affidavit of merit.

III.

The Court believes that Michigan's heightened pleading requirements for medical malpractice cases do not apply to cases filed in federal court invoking the Court's diversity jurisdiction because the state rules collide with the plain requirements of the Federal Rules and statutes prescribing the procedures to be used in the federal courts. The defendants' motion for summary judgment is grounded entirely on those state rules. However, the Court finds that the plaintiff's amended complaint complies with the applicable Federal Rules of Procedure.

Accordingly, it is **ORDERED** that the defendants' motion for summary judgment [dkt # 26] is **DENIED**.

It is further **ORDERED** that the Case Management and Scheduling Order is modified as follows:

    The parties shall submit a proposed Joint Final Pretrial Order to chambers on or before **May 8, 2006**.

    The Final Pretrial Conference shall be held before the Court on **May 15, 2006** at 2:30 o'clock in the afternoon.

    Trial shall commence on **May 30, 2006** at 8:30 a.m.

The balance of the Case Management and Scheduling Order shall remain in full force and effect.

                                            s/David M. Lawson
                                            DAVID M. LAWSON
                                            United States District Judge

Dated: January 23, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 23, 2006.

                s/Tracy A. Jacobs
                TRACY A. JACOBS